Mr. Nierman, you may proceed for the appellant. Thank you. Mr. Tyler, Mr. Cole, Judge Cook, may it please the Court, I'd like to reserve four minutes that's fine. Counsel, we have a three count case here, failure to promote, suspension and termination of Lolita Wilson, and each of those counts today, we do not have to prove, all we have to show, and all we did show, is that there was enough evidence for these three claims to go before a jury. As to the failure to promote, Lolita Wilson attempted to get promoted to the position of work leader, a position hardly held, if at all, for short periods of time, by females, and it's not that difficult, the work leader position is not that difficult of a position to accomplish. It's simply supervising people who do what you do, what she did, and what her competitors did, which was transporting patients. It's that simple. The reasoning given by the Cleveland Clinic is that Jason Petty, his opinion was that Lolita Wilson was not the best qualified. So the district court made a credibility determination. The only rational basis to make a decision like this, I would say, outside the subjective, is to look at what's objective. What's objective is that Lolita Wilson had four evaluations, one in 2008, two in 2009, and one in 2010, that either fully exceeded or meets expectations. In addition, there's this issue of trips per hour. Our position as to the trips per hour exhibits 19 through 22, April through July, show that Lolita Wilson exceeded the trips per hour of Mr. DeBerry. Now, wouldn't it have been necessary for Ms. Wilson to produce other evidence, evidence regarding, I guess she challenges the promotions of Knox and DeBerry. Correct. In particular. Wouldn't she need to produce some sort of evidence regarding their qualifications, their I know she has more years of service than they do, but there's not much else in the record that would compare her work experience with their experience, unless you can point that to me. If you think it's necessary. No, I don't think, I don't think it's, not that I don't want to answer your question, I don't think it's necessary because no criteria, there was no testing for the position, there was no objective criteria outlined for the position, and in addition, Lolita Wilson, at the time that she was exceeding DeBerry's trips per hour, was in the process of being fired for not having enough trips per hour, and that got reversed. That got reversed by Cleveland Clinic's own internal right of review apparatus that allowed her to do an internal appeal, and as we all know, that says quite a bit, I think, and it says quite a bit because we're talking about the employer's internal decision making power, typically that goes to the, that goes to what the employer's position is. Did she have some write-ups or critiques that have to, have to suggest changes in her attitude or changes in her conduct or so forth? She had a number of write-ups, the appellees in this case, in their brief listed, going all the way back to day one, all of the write-ups that she had. Did she show that these men had similar write-ups? No, she didn't show that they had similar write-ups, but that isn't necessarily a disqualifier in our mind. What did she show about these men that would show that they're not as qualified as she is except for this? Well, the bottom line, the bottom line on the suspension, and then, I mean, on the promotion, and then I'd like to move on to the suspension, on that is that, is the four comparisons with DeBerry as to how fast she was able to get her work done. But am I correct that DeBerry and Knox were subject to a different measure? They were in some sort of a dedicated area, and so they were not, the trips per hour or whatever the other one is, were calculated differently or not counted at all because they were in a dedicated area. So I guess I wonder how that comparison works, dispatches per hour. Dispatches per hour. You're right, Your Honor. And our position is, I just mentioned the exhibit numbers, the clinic itself did those comparisons despite the fact, those exhibits that I just mentioned, I think 19 through 22. So they applied to Knox and DeBerry even though their account kept S to them? They did the same testing on my client as they did on Knox and DeBerry. But let me move on to the suspension. The suspension involved a corpse, it involved Darlene Brooks, who was the lead, and my client who was not the lead, the follower, and they were supposed to move. They didn't know who they were supposed to move. They were patient transporters. They got to the room and when they got to the room, the lead transporter admits she wasn't supposed to go in the room unless a nurse was available. This suspension is a retaliatory allegation by you, right? On two counts, Your Honor. The first count, the first reason it's retaliatory is because after Ms. Wilson got fired, she filed a charge of discrimination and then I think it was about nine months later, she got suspended in connection with this incident. The allegation, is it retaliation? It's retaliation. Because they can suspend her any time if it's not retaliatory. Right, right. It's not only that, but Darlene Brooks had never filed a charge of discrimination as had my client and as such, we can say that those two individuals are comparators. The Cleveland Clinic's position there is, well, in terms of Lolita Wilson, that Lolita Wilson did something different. Darlene Brooks entered the room.  I think on the other side, the retaliatory... What did they do to Brooks for that? Nothing. They did nothing to Brooks, but when my client went into the room with Brooks, Brooks said, I'm going to go see if I can find somebody to help us. And then my client also went out to see if she could find somebody. When your client left, though, she left the deceased person in that room and the poor lady rolled off the corridor or whatever it was. She was the only one left in the room, right? Yeah, but there's no evidence that even if the nurse and Darlene Brooks and my client were all in the room, that they could have stopped this 350-pound corpse from rolling out of bed. And I don't really still understand the district court's position that they both violated different policies. And therefore, one doesn't get punished and the other does. I'm looking at my time. Why didn't she punish because she left the corpse in the room by itself and neither one was punished because they came into there without a nurse being present? I understand that. I understand that, but I disagree with it because there's nothing that links the policy of the clinic to what you just said, Your Honor. There's nothing that links that. The policy of the clinic to have somebody in the room with a deceased person until the nurse comes back? Right. And the other question is the policy as it relates to, I'm sorry, the policy as it relates to a corpse that weighs 350 pounds. They had a lift team. Why did the people who assigned them not assign the lift team? There's no evidence at all that that's the case, but I need to move on to the termination and the situation with the stints, the vaginal stints. In a nutshell, I see you've got 33 seconds left. In a nutshell, my client came in, the assistant nurse, and she were moving the patient. And Stephanie Taylor testifies that they were making the move when she got there. And when cross-examined, she said, well, one of the reasons you have to be careful is this vaginal stints may cause a problem. Well, in this case, it didn't. They made the lift. They made it fine. There was no damage. There was no damage whatsoever to the patient. OK. Thank you, Counselor. You'll have your full rebuttal. Good morning. May it please the Court, Steve Zashin from Zashin & Rich on behalf of the Cleveland Clinic. As Mr. Nierman had identified earlier this morning, Ms. Wilson has brought three distinct causes of action against the Cleveland Clinic, and they are failure to promote to a work leader position based upon her gender, retaliation based upon Ms. Wilson's three-day suspension when a deceased patient crashed to the floor, and retaliation based upon her termination when Ms. Wilson disregarded the instructions of a nurse and moved a patient who had rods inserted in her vagina. The District Court evaluated all of these claims and construed the evidence in Ms. Wilson's favor. There was no material issue of genuine fact such that a jury trial would be warranted. And in this case, Your Honor, the District Court got this case entirely correct. I think it's best to discuss each situation or each allegation separately, as Mr. Nierman has previously. All right. With this third one. Sure. Because I think that's his strongest case, and he didn't have much time to work on it here. But you have a short temporal proximity there, unlike this first retaliatory situation. What was it? Something like a couple of months? It was actually 101 days, Your Honor. And the District Court actually, in that particular case, construed the evidence in favor of Ms. Wilson and said, we're going to hold, at least for purposes of summary judgment, that she was able to establish a prima facie case. Okay. And then the court went off on the fact that she wasn't able to show pretexts? Is that what it was? Correct. The thing that bothers me is, number one, there wasn't any sort of a written policy about the procedure. And then also, there was another problem, I think, oh, yeah, they didn't do anything to Page, who was the other person who was involved in it. Tell us why that's not pretext. Yes, Your Honor. I think there are two reasons. I think the first issue is Suzetta Page was not a patient transporter, as was Lolita Wilson. It was Ms. Wilson's job to transport patients from one place to the other. What the investigation from the Cleveland Clinic discerned was that Ms. Wilson had become and said, don't move the patient, I'm going to get somebody else. That's what their investigation revealed. As a result, Ms. Wilson became anxious and began to move the patient. The Cleveland Clinic's investigation discovered that Suzetta Page, the personal care nursing assistant, only assisted because Ms. Wilson had already begun the lift. And that was the distinction that was made. And that's what the district court found as well. There was no evidence that that did not, in fact, happen. As to your first point, I think that the question was concerning a policy. The policy that I think the district court took issue with was that the patient transporter, Ms. Wilson in this particular instance, disregarded the instruction from the nurse. And that was the policy that was violated. That was the actual policy. It wasn't the question of, did she move the person with the vaginal rods in violation of a Cleveland Clinic policy. Supposed to lift them up or something. It's a four point lift. Sliding them over or something. Correct. It's a four point lift versus a slide. Is that what the nurse told her to do? The nurse didn't tell her to do anything. What the nurse told her is, don't do anything, I'll be right back. And during the Cleveland Clinic's investigation, this is what the district court found, is that Ms. Wilson admitted that during the investigation, she admitted that she had become anxious, that she felt pressured to make the lift and move on to the next assignment, and that the nurse had told her not to do anything, but she grew impatient because of the time lapse that had occurred. Anyway, how much time lapsed during that? Approximately 15 minutes. And that was what the district court found. There is no evidence of any pretext, because all of those things were based upon what the Cleveland Clinic had discerned as part of its investigation and as part of its honest, good faith belief. So whether it happened or didn't happen, it's what the Cleveland Clinic believed at the time. You're making reference to the investigation. Was that investigation completed? It's unclear from the record that it was, because Ms. Wilson was terminated, I think, on February 13, but the report of Ms. Taylor is February 13, and of Ms. Page is February 16. Correct. And so, arguably, it gives rise to an inference that Ms. Wilson was terminated before the investigation had been completed. Well, I think there's two points to that. First, the evidence of the record is that she actually had entered into information in the system on the 13th first, and secondarily... That Taylor had? Yes, correct. And then secondarily, Your Honor, the fact that Ms. Wilson had admitted what had actually occurred during her own investigation, and then subsequently Ms. Taylor's recitation of the facts which you're correct occurred on the 16th, was entirely consistent with that which Ms. Wilson had said during her own interview during the investigative process itself. So there's no inference to be raised, simply because the final paperwork from Ms. Taylor actually happened after the termination had occurred. And what about Ms. Page's report, which is dated February 16? Was that just not taken into consideration? Hers was the 13th. So... The 13th as well? Page's was the 13th, Wilson's was before, and Taylor's was after on the 16th. Taylor's the 16th. So, and both Page and Wilson's were entirely consistent with what happened, as was Ms. Taylor's, albeit Ms. Taylor's was on the 16th, and that's what the district court found. So what the district court found is there's no inference to be gleaned, even by virtue of the fact that the one was finished on the 16th, simply because it matched that which was already admitted by Ms. Wilson, as well as what was set forth by Suzetta Page, the personal care nursing assistant. So was the Taylor report February 16 relied upon in any sense? Was it in process, in the non-final stage, but relied upon? My understanding was that it was entered into a computer, but then it was subsequently written down. But it was entirely consistent, the written down version was entirely consistent with the investigation that the Cleveland Clinic had at the time. And the question is, you know, and the case law is very clear about this, is that an investigation need not be perfect. And in this case, you could actually argue that the investigation was perfect, because everybody was consistent with respect to what happened with regard to that patient. But did Taylor give a sort of an oral report before she? She gave a computerized report, and then a written report later, and it went into the system, effectively. How many days before did it go in the clinic? I believe it went in on the 13th, which was the day of termination as well. But again, they had already interviewed Ms. Wilson, who basically admitted the violation and admitted that she violated the instruction of the nurse on duty. So quite frankly, the position of the Cleveland Clinic is we didn't even need to ask these other people what happened, because she admitted she violated the policy. What was Page's job? She was just a PCNA, which is a personal care nursing assistant. She was not involved in any way. She was not similarly situated to Ms. Wilson. She's basically like a nurse assistant. So she was just simply there at the time at which Ms. Wilson decided to unilaterally try to move and slide the patient, as opposed to the four-point lift. To Mr. Nierman's point, regardless of whether the patient suffered any harm or complained about anything is really immaterial, because the issue is whether or not she disregarded the instruction of the nurse at the time. Page was not disciplined, was she? She was not. Did the Cleveland Clinic have any basis for that, because she had knowledge about the vaginal rods and the need to move the patient in a certain way, presumably? Presumably. The reason for that was because Ms. Wilson had admitted that she started the lift, and therefore, or the slide, actually, and Ms. Page indicated during the investigation that because the slide had already begun, she felt like there was nothing else to do, but then she couldn't sort of have the slide begin, but then not complete the slide, if that makes sense. And that was the differentiating factor between why Ms. Page wasn't disciplined, as opposed to why Ms. Wilson was discharged. Now, if I may, if I may turn back to the other portions of the argument. With respect to the failure to promote, what's important to remember is that Ms. Wilson failed to establish the fourth prong of the prima facie case, and that is an individual with similar qualifications was not a member of the protected class, and the issue in that case was the similar qualifications. And I think, Judge Cole, as you pointed out, the issue is the record is completely devoid of any counselings with respect to the two comparators that Ms. Wilson likes or wishes to attribute herself to, and that primarily is Mr. Knox and Mr. DeBerry. There's no evidence of any employee counselings whatsoever with respect to that. Similarly, Mr. Nierman wishes to identify that there must be objective criteria for this type of situation, and that's not true. That only relates to the second prong of the prima facie case, not the fourth prong. The criteria was well established, and it was good work performance, the ability to do a good job, efficiency, good customer service, and the willingness to go the extra mile. And Mr. Petty, both at his deposition and reinforced by his affidavit, suggested that both Mr. Knox and Mr. DeBerry had those skill sets and qualifications that Ms. Wilson didn't have, and thus, she was not similarly qualified as they were. With regard to pretext, she basically doesn't get there because she's unable to refute any of the rationale provided by the Cleveland Clinic as to why these individuals were better qualified than she was. You know, she tries to come up with a number of things, but they don't get her there. The one that she relies on most heavily is this fact that she simply had longer longevity in the position. But as we all know, someone with longer longevity doesn't mean they're more experienced in the position for which they're applying for a promotion. And as a result, at least as it relates to the failure to promote, the district court got this entirely correct, that there's no inference to be made, and that she failed to make out a prima facie case, and she also could not articulate any reason of pretext to suggest that the Cleveland Clinic's reason was wrong, or that it wasn't based on fact, or that it had shifted over time. And Cleveland Clinic ever promoted a woman in one of these kind of jobs? Yes. That she was looking for? Yes. And it should also be noted that there was a panel, and on that panel were four women who were making the determinations about who were the appropriate work leaders. But it's also important to note that the patient transporter positions, by statistics, there were 125 men who happened to have that job, and I believe there were only 15 or so females. So it's not unusual that when 20 people applied, that that was the result of what you might see. But nevertheless, Ms. Wilson didn't provide any statistical evidence to suggest pretext either. There was no regression analysis. There was no, any type of statistics to suggest that something other than what was happening or shouldn't have happened by virtue of gender. With respect, and I know I've only got a couple of minutes, I do want to point out with respect to the suspension, the issue in that case is, and this is a retaliation, the EEOC charge was filed over seven months prior to the issue with regard to the suspension. And Mr. Nierman identifies there was a violation of policy. Both Ms. Brooks and Ms. Wilson entered the patient room without a nurse. That was a violation of policy. Neither of them were disciplined for that. The discipline came because Ms. Brooks was the leader on the lift, and she told Ms. Wilson to stay in the room when she then departed the room to say, we need help because this body is too big. Ms. Wilson, however, decided to depart the room, and I think, Judge Seiler, your point was instructive on this, which was, she said, stay in the room, and she left the room, and it was only after she left the patient unattended did the 350-pound body crash to the floor, and therefore, there is no evidence whatsoever of any form of retaliation because, remember, the retaliation claim, we go to a higher standard than we do based on status-based discrimination. The Nassar case, which came about, says that it must be but for causation, and in this case, there's no evidence whatsoever that the fact that she'd filed a charge played any role with respect to her three-day suspension relative to the patient drop. This happened how long after she filed a charge? Over seven months, over seven months, Your Honor, and unless there are any other questions, I will thank you very much for my time. Okay. Thank you. Thank you. My remaining time will be spent on the termination, as Judge Seiler has indicated, that may be our strongest case. And I want to, the clinic's pretextual argument is that the termination was justified because Wilson's actions were improper, unsafe, and violated the nurse's instructions. Well, Nurse Taylor admitted that when she walked into the patient's room, that Ms. Wilson and the nurse assistant had already started to move the patient. That's in the record of 25-8, pages 22 and 23. If that's the case, if that's the case, and they had already started to move the patient and there was no instruction from the nurse, then what instruction was violated? Do you admit that the nurse told her not to move the body until she got back or something like that? No, that's a suspension case. No, that's not in the evidence, Your Honor. As far as I know, I don't believe that that's in the evidence at all. And so, looking at the reasons given by the clinic, that Wilson's actions were improper, unsafe, and violated the nurse's instructions. They didn't violate the nurse's instructions. And were they unsafe? Stephanie Taylor, the nurse, testified that she did not say that Ms. that she testified she could not say Ms. Wilson's actions injured the patient, were unsafe, caused the patient pain, and she also testified that there was a special procedure for moving patients with stints, but didn't know if Wilson knew about it, and didn't tell Wilson about it. So, in order to examine pretext here, I believe we must examine the presence or absence of an applicable policy, and if there is such a policy, the purpose of the policy. If there was, I mean, this is a patient who had gone through surgery and radiation, and my client is asked to move her, and they don't tell her about the surgery, they don't tell her about the radiation, they don't tell her about the stints, there's no clinic policy that alerts people like Lolita Wilson, look, you've got to handle this kind of situation with kid gloves. We go back to the fact that Ms. Wilson was terminated for moving too slow. She got that reversed. She didn't want that to happen again. They had waited 15 minutes, as Mr. Zashin said, and then they decided to start to make the move, and according to Nurse Taylor, again, she said when she walked into the patient's room, Ms. Wilson and the nurse assistant had already started to move the patient. So, imagine that you've got a nurse assistant and Lolita Wilson moving the patient. You've got the patient moved partially, and now a nurse is going to come in and say, oh no, put her back when she's already halfway into the move itself. I think we've got to go back and take a look at why wouldn't the Cleveland Clinic with a patient like this, why wouldn't they take a look at having a policy that would give special status to a patient like this, have a special team move a patient like this, and going back again, I just have to reiterate, the clinic says Wilson's actions were improper and unsafe. They weren't unsafe. Nurse Taylor admitted that. There was no injury, and she didn't know that there could have been because they didn't tell her, and they let her go right after her charge. We met that, so thank you very much. Thank you, Judge Cook, Judge Cole, and Judge Seiler. Have a nice weekend. Great. Same to you. Thank you both for your arguments today. Travel safely, and the case will be submitted. It's the last case.